IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**

v.

**JESUS DAVILA-FUENTES**,

Defendant.

Criminal No. 16-404 (GAG/BJM)

## REPORT AND RECOMMENDATION

In June 2016, agents with the Puerto Rico Police Department ("PRPD") executed a search warrant at the residence of Jesus Davila-Fuentes ("Davila") and found contraband therein. Docket No. 31 ¶ 5. Davila was arrested after the contraband was found, and he made post-arrest incriminating statements. *Id.* ¶ 6. He stands charged with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and possession of a machinegun, in violation of 18 U.S.C. § 922(o). Docket No. 11. Davila moved for a *Franks* hearing, suppression of the physical evidence discovered inside his residence, and suppression of his post-arrest statements. Docket No. 29. The government opposed. Docket No. 31. This matter was referred to me for a report and recommendation. Docket No. 32.

For the reasons set forth below, the motion to suppress should be **DENIED**.

## BACKGROUND

On June 16, 2016, PRPD agents executed a search warrant at Davila's residence. A Puerto Rico state court issued the warrant upon the request of PRPD Agent Emmanuel Pagan Rojas ("Pagan"). In support of the request for a search warrant, Pagan submitted a sworn statement. Docket No. 29-1 ("Aff."). To establish the falsity of certain statements in Pagan's affidavit, Davila proffered his own declaration. Docket No. 29-2 ("Decl.").

*Pagan's Affidavit*

Pagan's affidavit relays that at around 5:00 p.m. on June 7, 2016, Sergeant Miguel Conde informed Pagan about a confidential tip provided to a law enforcement officer. Aff. at 1. The tipster alleged that there were two individuals at Rio Grande State Urbanization,

DD-4 29th Street (the "residence"), and that these two individuals arrived to the residence with firearms and black bags. *Id.* The tipster described one of the individuals as "skinny," "tall," and "white," and added that this individual had "shoulder length braids." *Id.* The tipster described the other individual as "fat" and "black." *Id.* That same day, Pagan headed to the residence in an unmarked vehicle to investigate the tip. *Id.*

At approximately 5:50 p.m., Pagan saw a "tall, fat, black individual" exit the residence holding two black bags that he then placed inside a vehicle parked near the residence. *Id.* at 2. As this individual was placing the bags in the vehicle, Pagan saw a "long black rifle magazine" fall from one of the bags. *Id.* This individual picked up the rifle magazine that fell to the ground and placed it inside the vehicle. *Id.* Thereafter, the individual returned to the residence. *Id.* After "some seconds," this individual exited the residence with another person—a "skinny," "white" individual who had "shoulder length braids." *Id.* These two individuals got in the vehicle and left the residence. *Id.*

At around 6:15 p.m., the vehicle returned to the residence. *Id.* The "skinny," "white" individual entered the residence, while the "fat," "black" individual retrieved a black bag from inside the vehicle before also entering the residence. *Id.* Thereafter, a second vehicle with two occupants on board (a man and a woman) arrived to the residence. *Id.* The woman aboard the second-mentioned vehicle entered the residence, and the man aboard that vehicle similarly did so shortly thereafter. *Id.* As this man entered the residence, Pagan noted that he was carrying a "big black trash bag." *Id.* at 2. Believing that the residence was being used to store firearms, Pagan sought a search warrant on June 10, 2016. *Id.* at 3. The warrant was executed six days later, contraband was found inside the residence, and Davila made post-arrest incriminating statements. Docket No. 29 at 3; Docket No. 31 ¶ 6.

***Davila's Offer of Proof***

Attempting to show the falsity of certain statements in Pagan's affidavit, Davila proffered a short declaration. Decl. ¶¶ 1–8. Davila states therein that on June 7 he lived with his girlfriend at the residence, and that these two individuals were "the only people

who had keys to the property." *Id.* ¶¶ 1–2. Davila asserts that on June 7 he left the residence "in the morning hours to run errands" and "returned in the afternoon," that when he returned no persons were inside his residence, that no persons brought firearms or firearm accessories to the residence while he was there, and that no one other than his girlfriend had access to the residence in his absence. *Id.* ¶¶ 3–6. Aside from his own declaration, Davila offered no other proof to demonstrate that Pagan's affidavit has false statements.

## DISCUSSION

Davila contends Pagan falsely stated that he saw "multiple men . . . entering and exiting his home with black bags, and that on one occasion a black bag contained a magazine." Docket No. 29 at 3. Davila adds that because these statements were necessary to a finding of probable cause, the search warrant was invalid, the search pursuant to that warrant was unlawful, and "any statements" or evidence "resulting from the illegal search of his" residence should be suppressed. *Id.* at 1, 4, 5. The government responds that Davila is not entitled to a *Franks* hearing because his assertions of falsity are propped solely by the statements in his own conclusory declaration. Docket No. 31 at 4.

The Fourth Amendment protects individuals against unreasonable intrusion by the government, and this "protection stems from the Amendment's instruction that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States* v. *McLellan*, 792 F.3d 200, 208 (1st Cir.), *cert. denied*, 136 S. Ct. 494 (2015) (quoting U.S. Const. amend. IV). An "affidavit supporting a search warrant is presumptively valid," *United States* v. *Gifford*, 727 F.3d 92, 98 (1st Cir. 2013), but a "defendant may attempt to rebut this presumption and challenge the veracity of the affidavit." *McLellan*, 792 F.3d at 208. The Supreme Court established the mechanism for doing so in *Franks* v. *Delaware*, 438 U.S. 154 (1978).

Under *Franks*, a defendant may overcome the presumptive validity of an affidavit and obtain an evidentiary hearing—commonly known as *Franks* hearing—if he makes

"two substantial preliminary showings": (1) "that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth"; and (2) that the "falsehood or omission [was] necessary to the finding of probable cause." *McLellan*, 792 F.3d at 208; *see also United States* v. *Moon*, 802 F.3d 135, 149 (1st Cir. 2015). When a defendant seeks a *Franks* hearing on account of an omission, he must establish that "the inclusion of the omitted information 'would have led to a *negative* finding by the magistrate on probable cause.'" *McLellan*, 792 F.3d at 208 (quoting *United States* v. *Rigaud*, 684 F.3d 169, 173 n.5 (1st Cir. 2012)). In contrast, when "a false statement is in the affidavit, the inquiry is whether its inclusion was necessary for a *positive* finding by the magistrate on probable cause." *Rigaud*, 684 F.3d at 173 n.5 (quoting *United States* v. *Castillo*, 287 F.3d 21, 25 n. 4 (1st Cir. 2002)). Failure to make a substantial preliminary showing on either of the "two elements dooms the defendant's challenge," as well as his or her entitlement to a *Franks* hearing. *See McLellan*, 792 F.3d at 208.

*Moon* aptly illustrates why Davila has failed to make a substantial preliminary showing as to the falsity of the statements in Pagan's affidavit. 802 F.3d at 149. In that case, Detective Michael Ross ("Ross") obtained a search warrant for the defendant's apartment. *Id.* at 140. "In his supporting affidavit, Ross stated that, based on information from a confidential informant ("CI") who previously purchased heroin from Moon, the Boston Police Department ("BPD") had conducted surveillance of three recent controlled buys by this CI from Moon, including one within the 'last seventy-two hours.'" *Id.* at 140. In addition, "Ross stated that during that most recent transaction, Moon was spotted driving a green Mercedes that was registered to" his girlfriend at the apartment's address. *Id.*

Moon moved for a *Franks* hearing, but the district court refused to hold such a hearing. *Id.* at 148–49. To obtain the *Franks* hearing, Moon "attempted to discredit the affidavit's report of the controlled buys by establishing that he was not in Boston on the one date reported with some specificity in the application, i.e., within 'the last seventy-two hours.'" *Id.* at 149. In support of this assertion, Moon proffered his own affidavit, which

essentially stated that he was not present in the area near his apartment when the officer said he conducted the surveillance. *See id.* at 149. And Moon also proffered "records from the American Automobile Association ("AAA") showing a request for a tow of the green Mercedes identified in the warrant application"; this request was made from a place approximately 45 minutes away from the location of Moon's apartment. *Id.* The First Circuit affirmed the district court's decision, finding "no clear error in the district court's judgment that Moon's proffered evidence did not amount to a 'substantial' showing of falsity." *Id.* at 149.

The First Circuit reasoned that the AAA records did not show that Moon was out of town for the entire period before the officers applied for the search warrant, nor did these records show that Moon was out of town for any "substantial part of that period." *Id.* And because Moon claimed to be in a city within Massachusetts that was approximately 45 minutes away from the city where his residence was located, the court reasoned that "Moon easily could have been in both cities on the same day." *Id.* The *Moon* court further reasoned that the "factual gap in Moon's attempt to show the affidavit's inaccuracy—and thus its knowing or reckless falsity—cannot be filled by his own denial that he sold heroin in Boston within the relevant period." *Id.* "That disclaimer," the First Circuit held, constituted "no more than a conclusory and unsupported allegation that falls well short of the 'substantial preliminary showing' necessary to justify a *Franks* hearing." *Id.*; *see also United States* v. *Southard*, 700 F.2d 1, 10 (1st Cir. 1983) (district court's denial of *Franks* hearing affirmed where appellants' essentially "set up a swearing contest" with the agent by flatly denying the gambling-related conversations described in the agent's affidavit).

As in *Moon* and *Southard*, Davila seeks to discredit Pagan's affidavit by submitting his own declaration. Because Davila's declaration flatly denies that Pagan could have seen the likely unlawful activity to which he swore in his affidavit (i.e., an individual exiting the residence with a black bag that contained a rifle magazine), Davila's disclaimer is "no more than a conclusory and unsupported allegation that falls well short of the 'substantial

preliminary showing' necessary to justify a *Franks* hearing." *See Moon*, 802 F.3d at 149. Indeed, because Davila has offered no proof other than his own affidavit, he essentially has "set up a swearing contest" between himself and Pagan. *See Southard*, 700 F.2d at 10. But this, the First Circuit has held, is insufficient to entitle a defendant to a *Franks* hearing. *See id.*; *see also Garuti* v. *Roden*, 733 F.3d 18, 25 (1st Cir. 2013) ("Conclusory allegations are insufficient to raise a substantial factual issue."); *United States* v. *Arroyo*, 972 F. Supp. 2d 112, 118 (D. Mass. 2013) ("A defendant's affidavit alone is not cause for an evidentiary hearing if it contains conclusory allegations . . . and makes no offer of proof with respect to any other facts that might support those allegations . . . .") (internal citations omitted).

Other circuit courts faced with similar circumstances have arrived at similar results. *See United States* v. *Perry*, 714 F.3d 570, 575 (8th Cir. 2013); *United States* v. *Pace*, 898 F.2d 1218 (7th Cir. 1990) (substantial preliminary showing for *Franks* hearing not made where defendant provided, among other things, a "self-serving statement in his affidavit that he never accepted bets on the number listed in the warrant affidavit"). In *Perry*, for example, the defendant requested a *Franks* hearing, alleging that the officer's "warrant affidavit contained materially false information." *Perry*, 714 F.3d at 575. And the defendant (Perry) "submitted an affidavit challenging" the accuracy of the affidavit. *Id.* "The district court denied the motion, concluding that Perry failed to make a 'substantial preliminary showing of deliberate falsehood or reckless disregard for the truth.'" *Id.* (quoting *United States* v. *Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012)). On appeal, Perry argued that "it was error to deny a *Franks* hearing because the allegations in [the officer's] warrant affidavit were refuted by Perry's affidavit." *Perry*, 715 F.3d at 575. The Eighth Circuit affirmed the district court's refusal to hold a *Franks* hearing, holding that "[m]erely averring that a warrant affidavit contained false information is not sufficient." *Id.*

In light of the above, Davila has failed to make a substantial preliminary showing of falsity. *See McLellan*, 792 F.3d at 208 (failure to make a substantial preliminary showing of falsity "dooms the defendant's challenge"). Indeed, because Davila has failed to make a

substantial preliminary showing of falsity, granting a *Franks* hearing under the circumstances here would be tantamount to allowing Davila to go on a fishing expedition for a Fourth Amendment violation where there is insufficient evidence to suggest such a violation has at all occurred. *See United States* v. *Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (Sotomayor, J.) ("To avoid fishing expeditions into affidavits that are otherwise presumed truthful," the defendant must make the two substantial preliminary showings called for by *Franks*). Such is not the purpose of a *Franks* hearing, and thus the court should deny Davila's request for a *Franks* hearing. *See id.* And because Davila has not demonstrated at this juncture that a Fourth Amendment violation has occurred, the court should further deny his motion to suppress the evidence seized inside his residence and his post-arrest incriminating statements. *See, e.g.*, *United States* v. *Mays*, 819 F.3d 951, 958 (7th Cir. 2016) (because "we find no Fourth Amendment violation," defendant's "contention that his inculpatory statement was the fruit of" such a violation "must fail"). In sum, the court should deny Davila's motion to suppress.

## CONCLUSION

For the foregoing reasons, the motion to suppress should be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 20th day of April 2017.

                                        *S/ Bruce J. McGiverin*
                                        BRUCE J. MCGIVERIN
                                        United States Magistrate Judge